J. Irwin Shapiro, J.
This is a motion to suppress evidence consisting of a quantity of heroin.
Two questions are involved here: One is the validity of an arrest by a New York City police officer of one for whom there is in fact an outstanding Federal warrant but which the police officer did not have in his possession at the time of arrest, and the other is the validity of such arrest when made by the entry into a hotel room with a passkey obtained from the hotel clerk, without first giving notice of the officer’s authority and purpose. The facts, developed upon a hearing, are as follows:
On October 28, 1967, at about 6:40 a.m., Detective George Eiden on duty in the police station, received a telephone call from an unidentified female, who stated that she had just left Room 202 of the Hotel Colonial in Queens; that one Herman Floyd was occupying that room; and that he was “ a fugitive, and wanted for forgery” on a Federal warrant. Eiden immediately called Postal Inspector Gerard Gaughran, whom he had known for many years and whose telephone number he had, and asked Gaughran whether he knew if a warrant was outstanding on Floyd. Gaughran said there was such a warrant, and he told Eiden to call one Ryan of the United States Secret Service relative thereto. Gaughran also told Eiden that he, Gaughran, had seen Floyd on the street at one time and tried to apprehend him, but that Floyd ran away.
Eiden called Ryan and was informed that a bench warrant for the apprehension of Floyd was still in force and that the matter had been assigned to him, and he asked Eiden to apprehend Floyd. Such a warrant for Floyd had been issued by the United States District Court for the Eastern District of New York in May, 1967 by reason of Floyd’s failure to appear in that court for sentence after a plea of guilty.
Detective Eiden, accompanied by two uniformed officers, went to the Colonial Hotel at about 7:00 a.m., obtained the key to Room 202 and proceeded to it. Eiden drew his revolver, opened the door with the key and entered. In this 10-foot by 7-foot room he found Floyd sitting in bed against two pillows and a *375 “fix” (an eyedropper with a spike and a bottle cap with -a piece of cotton in it) on a table alongside the bed. Floyd admitted his identity, and Eiden stated, “ You are under arrest. I want you on a federal warrant ”. Eiden then advised Floyd of his rights (Miranda v. Arizona, 384 U. S. 436) and handcuffed him. In response to Eiden’s question, Floyd stated that the “ fix ” was his and that he had just taken a shot and had used three bags. Floyd, however, denied that there was any more “ stuff” in the room. Not content with this assertion, Eiden thereupon searched the bed and two packages fell out of the pillowcase that Floyd was lying back on. Each package contained a number of glassine envelopes.
I
I hold that Eiden a New York City detective, had the right to arrest defendant under the outstanding Federal bench warrant, even though it was not physically in his possession at the time, and the fact that the warrant was addressed to the United States Marshal for the Eastern District of New York, or any of his deputies, or any United States Marshal is wholly irrelevant.
Rule 9 (subd. [c], par. [1]) of the Federal Rules of Criminal Procedure provides that a warrant issued by a Federal court upon an indictment shall be executed as provided by rule 4 of those Rules of Criminal Procedure. Rule 4 (subd. [c], par. [3]) provides as follows: “ The warrant shall be executed by the arrest of the defendant. The officer need not have the warrant in his possession at the time of the arrest, but upon request he shall show the warrant to the defendant as soon as possible. If the officer does not have the warrant in his possession at the time of the arrest, he shall then inform the defendant of the offense charged and of the fact that a warrant has been issued.”
Clearly that rule authorizes an arrest under an outstanding warrant despite the fact that the arresting officer does not have it in his possession. (United States v. Petti, 168 F. 2d 221, 223.) In that case, Federal Bureau of Investigation agents entered the defendant’s room with a passkey during the latter’s absence. A bench warrant had been issued for the defendant’s arrest but none of the agents had a copy of the warrant or a search warrant when they entered the room, and they arrested defendant pursuant to the warrant when he later came to the room. That arrest, the court held, was lawful and that consequently the search incidental thereto was also lawful.
There is a sound basis in reason for this rule. As the court said in Matter of Kosopud (272 F. 330, 336): ‘ ‘ Nor is any sound *376 reason suggested why the original arrest was unlawful because the arresting officer did not have in his physical possession the warrant of arrest. It had been issued and instructions to act thereon had been received by the arresting officer. It would be a strong proposition in an ordinary felony case to say that a fugitive from justice for whom a capias or warrant was outstanding could not be apprehended until the apprehending officer had physical possession of the capias or the warrant. If such were the law criminals could circulate freely from one end of the land to the other, because they could always keep ahead of an officer with the warrant. ’ ’
Thus, if Eiden otherwise had the right to arrest defendant, the fact that he was not physically in possession of the actually existing warrant would be of no consequence.
The question, therefore, comes down to whether the fact that the warrant was addressed to United States Marshals or their deputies rendered Eiden ineligible to arrest the defendant thereunder. Buie 4 (subd. [c], par. [1]) of the Federal Buies of Criminal Procedure, which also deals with the execution of an arrest warrant issued by a Federal court, provides that “ The warrant shall be executed by a marshal or by some other officer authorized by law.” (Italics supplied.) The italicized portion simply means that in addition to a Federal Marshal, any other officer authorized to make an arrest in the particular jurisdiction involved may do so. Furthermore, an arrest, without a warrant, may properly be made by any person whether he be a law enforcement officer or private citizen, where a Federal felony has in fact been committed. (United States v. Lindenfeld, 142 F. 2d 829, 831, cert. den. 323 U. S. 761; also, see, United States v. Burgos, 269 F. 2d 763, 766.) Here a Federal felony had been committed by the defendant, for the bench warrant Eiden was informed about was predicated upon a plea of guilty by defendant to an indictment charging him with forgery, and the conversations Eiden had with the Postal Inspector and the Secret Service Agent furnished probable cause to establish that fact. That Eiden did not have first-hand knowledge of the commission of the' felony, or the defendant’s failure to appear for sentence and of the issuance of the warrant by reason thereof, but was informed of those facts by Postal Inspector Gaughran and Secret Service Agent Byan, does not, of course, preclude that information from constituting probable cause. When a law enforcement agency possesses information which would support an arrest without a warrant, the arresting officer, if acting under that information, need not personally or first-hand know the underlying facts for the arrest to constitute *377 it a lawful arrest. (Cf. Williams v. United States, 308 F. 2d 326, 327.)
II.
I also hold that defendant’s arrest was lawful despite Detective Eiden’s entry into defendant’s room with a passkey without giving prior notice of his, Eiden’s, authority and purpose.
The lawfulness of an arrest by a State peace officer with or without a warrant for violation of Federal law is to be determined by applicable State law. (Ker v. California, 374 U. S. 23, 37; Miller v. United States, 357 U. S. 301, 305-306; United States eco rel. Lupo v. Fay, 332 F. 2d 1020, 1022; Gatewood v. United States, 209 F. 2d 789, 791.)
Section 175 of our Code of Criminal Procedure provides that an “ officer may break open an outer or inner door or window of any building, to execute [a] warrant, if, after notice of his authority and purpose, he be refused admittance.” Section 178 of the Code of Criminal Procedure contains a similar provision as to an arrest without a warrant. From this statutory scheme, it follows .that an arrest made after breaking into a room or building without the police officer first giving notice of his authority and purpose is an unlawful arrest. (People v. Griffin, 22 A D 2d 957; People v. Goldfarb, 34 Misc 2d 866, 869; also, see, People v. Gallmon, 19 N Y 2d 389, 392-394.) It has also been so held under a similar Federal statute in Miller v. United States (357 U. S. 301, 308-309, supra). In fact, the requirement that a police officer give notice of his authority and purpose before breaking into a room or building, after entry is refused or not given, in order to make an arrest, is a heritage from the common law. (Accarino v. United States, 179 F. 2d 456, 465.) Obviously, entering a hotel room with a key obtained from the clerk, or having the clerk open the room with a key, constitutes a breaking which requires prior notice of authority and purpose. (Ker v. California, supra, p. 38; also, see, Stoner v. California, 376 U. S. 483, 488-489; People v. Gallmon, supra, pp. 396-398; Munoz v. United States, 325 F. 2d 23, 26.)
However, such an entry and the consequent arrest are not unlawful if the authority and purpose of the police officer are already understood or exigent circumstances exist which make it imperative that the accused be taken into custody without running the risk of a prior warning. Some examples of such exigent circumstances are peril to the safety of the arresting officer (Gilbert v. United States, 366 F. 2d 923, 931, 932), or danger that the accused might flee (Ker v. California, supra, *378 pp. 39-40; also, see, Miller v. United States, supra, p. 310; Jackson v. United States, 354 F. 2d 980, 982), or the need to prevent the destruction of evidence (People v. De Lago, 16 N- Y 2d 289, 290-291; People v. McIlwain, 28 A D 2d 711; see, also, People v. Gallmon, supra, note 1, to dissent of Furo, Ch. J., p. 395; People v. Montanaro, 34 Misc 2d 624, 630).
It follows that if an arrest is lawful, despite a breaking into premises without the required prior notice, then the search and seizure incident to that arrest is also lawful. (See, e.g., United States v. Rabinowitz, 339 U. S. 56, 63; Marron v. United States, 275 U. S. 192, 199; Harris v. United States, 331 U. S. 145, 150-151; United States v. Romero, 249 F. 2d 371, 374; People v. Wulff en, 23 AD 2d 875,876.)
I find that exigent circumstances existed here which justified Detective Eiden in entering defendant’s room with a key without giving notice of his authority or purpose. Eiden had been informed that defendant was a fugitive and he knew of defendant’s getaway when Inspector G-aughran tried to apprehend him on the street. Under the circumstances, it was perfectly natural for the Detective to believe that defendant would again attempt to escape if he knew he were about to be taken into custody. Eloquent proof of the Detective’s rational and normal apprehension both for his own safety and the possible disappearance of the defendant are found in the fact that the Detective was accompanied by two uniformed police officers and that he drew his gun before turning the key and opening the door. To have done any less would have been extremely dangerous and would properly have subjected the Detective to criticism if the defendant had eluded him. I have therefore concluded that the arrest and the search and seizure incident thereto were entirely lawful.
Since the conclusion of the hearing, defendant’s attorney has submitted an affidavit by the manager of the Colonial Hotel stating that the registry record shows that on the morning when defendant was arrested therein, Room 202 was registered to a Mr. and Mrs. Johnson (with the time of arrivel as 6:45 a.m.). In an accompanying letter, defendant’s attorney states that this alleged proof is submitted in contradiction of Detective Eiden’s direct testimony that, in answer to his question whether Herman Floyd was registered there, the hotel clerk replied that he was in Room 202.
I have considered this additional matter in reaching the conclusion on the whole record that defendant’s arrest was lawful. Apart from the fact that the registry and the affidavit of the hotel manager do not necessarily contradict Eiden’s *379 testimony, this factor is quite irrelevant in the body of the entire proof. The plain incontrovertible operative fact is that defendant was arrested in Boom 202, which Eiden entered with a passkey — regardless of what name was contained on the registry card — after he had been informed by a Postal Inspector and a Secret Service Agent that there was an outstanding bench warrant for defendant’s arrest. It is not an unknown practice for hotel registrants to register under fictitious names and for some hotel clerks to permit such practice by people they know — particularly where the registration is at 6:45 in the morning.
Motion to suppress is in all respects denied.