■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HERMAN FLOYD, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered July 12, 1968, convicting him of criminal possession of a dangerous drug in the second degree (a felony) and other crimes, upon a jury verdict, and imposing sentence. Judgment affirmed. Benjamin, Munder and Kleinfeld, JJ., concur; Christ, Acting P. J., dissents and votes to reverse the judgment and to dismiss the indictment, with the following memorandum in which Martuscello, J., concurs: On the morning of October 28, 1967, Detective Eiden of the New York City Police received a telephone call from an anonymous woman. She told him that a man named Herman Floyd, wanted on a Federal fugitive warrant, was in a certain room at a hotel in Queens County. Eiden telephoned two Federal agents who advised him that a warrant was outstanding for Floyd and asked Eiden to apprehend him. One of these Federal agents also told Eiden that he had seen Floyd on the street at one time and had tried to apprehend him but Floyd had run and gotten away. Detective Eiden, with two other officers, went to the hotel and asked the clerk if Herman Floyd was registered there. The clerk replied that Floyd was in the room indicated by the anonymous woman caller. Eiden obtained a key to the room from the clerk, went up to the room with two other officers, drew his gun, unlocked and opened the door, and entered the room, making no announcement of his identity, authority or purpose. He found defendant sitting up in bed. Eiden asked him if he was Herman Floyd and, upon receiving an affirmative answer, advised him that he was under arrest on the Federal warrant. Eiden also advised defendant of his rights, got him out of the bed, handcuffed him and began searching the room. On a table alongside the bed, Eiden saw a "fix" and asked defendant if it was his. Defendant said it was and that he had just used three bags and taken a "shot". Eiden asked where the rest of the "stuff" was and defendant said there was no more. Eiden then searched the room, tore the bed apart and found two packages of narcotics in a pillow case. Defendant's pretrial motion to suppress the evidence was denied and he was subsequently convicted, after trial, of criminal possession of a dangerous drug and a hypodermic instrument. In my opinion, Detective Eiden's failure to comply with sections 175 and 178 of the Code of Criminal Procedure rendered the arrest unlawful and invalidated his subsequent observation and search. Section 175 provides that an officer may break open an outer or inner door to execute a warrant of arrest if, after notice of his authority and purpose, he is refused admittance. Section 178 contains the same provision for an officer making an arrest without a warrant. There is no dispute — and Criminal Term so found — that entering a hotel room with a key obtained from the clerk is a "breaking" which requires prior notice of authority and purpose. An officer's failure to give the required notice renders the arrest unlawful unless, under State law, exigent circumstances justify noncompliance (*Ker* v. *California*, 374 U. S. 23, 38–40). New York decisional law permits noncompliance under exigent circumstances (*People* v. *Gallmon*, 19 N Y 2d 389, cert. den. 390 U. S. 911; *People* v. *McIlwain*, 28 A D 2d 711). The inquiry turns, therefore, upon whether Detective Eiden was justified in not complying with the notice requirement because of exigent circumstances. It is conceded that Eiden knew nothing about the narcotics in defendant's room at the time he entered. He entered to arrest defendant on a Federal bench warrant arising out of defendant's failure to appear for sentencing on a forgery charge. There was, therefore, no need to enter unannounced to prevent the destruction of evidence. Nor does the record indicate that Eiden had any reason to believe that defendant was armed; or that he (Eiden) was in danger; or that defendant might resist arrest in order to escape (*Sabbeth* v. *United States*, 391 U. S. 585, 591). Realistically, of course, *every* time a police officer raps on a door and

announces who he is and that he has come to arrest the person inside, the latter might arm himself, prepare to resist, and attempt to escape or to destroy evidence. If those general possibilities, without more, constitute "exigent" circumstances, the statutory notice requirement has no substance, for "exigent" circumstances then exist in every case. I think something more than those general possibilities must exist to justify the unannounced, forcible entry, e.g., that the officer has reason to believe that the suspect is armed or, in some other manner, presents a serious peril to the officer (cf. *Gilbert* v. *United States*, 366 F. 2d 923, cert. den. 388 U. S. 922) or to another (*People* v. *Wojciechowski*, 31 A D 2d 658); or that the person inside, made aware of the officer's presence outside, engages in activity which justifies the officer in believing that an escape or the destruction of evidence is being attempted (*Ker* v. *California*, 374 U. S. 23, 47, *supra*, [Brennan, J. dissenting]). No such justification appears in the record of this case. The question remains whether Detective Eiden's information that defendant was wanted on the Federal bench warrant and had run away from a Federal agent on the street at some prior time justified Eiden in believing that, if he complied with the statute, defendant would attempt to escape. In other words, over and above the general possibility of attempted escape which the notice might precipitate in *every* case, did these additional items of information create "exigent" circumstances? I do not think so. There is nothing in the record to indicate that defendant had any feasible means of escape from the hotel room other than through the door which Eiden entered. Although Eiden had two other officers with him, all three went through the door of the room, making no attempt to cover an escape from a window or other exit. A reasonable inference to be drawn from this conduct is that the officers were not concerned about an escape through some other exit. In *People* v. *Griffin* (22 A D 2d 957), where there was movement within the apartment, a refusal to open the door, and partial compliance with the statute, this court nevertheless rejected the People's contention that notice would have frustrated the arrest and led to the destruction of evidence. Perhaps the most persuasive argument that knowledge of defendant's prior flight did not provide "exigent" circumstances dispensing with the notice requirement is to be found in section 187 of the Code of Criminal Procedure. That section expressly provides that "To retake the person escaping  *  *  *  the person pursuing may, *after notice of his intention and refusal of admittance*, break open an outer or inner door or window of a building" (emphasis added). I think, therefore, that noncompliance with the statutory notice requirement invalidated the arrest (cf. *Miller* v. *United States*, 357 U. S. 301, 313–314). The unlawful entry and arrest tainted all that followed it, i.e., Detective Eiden's observation of the "fix" at defendant's bedside and the search which produced the narcotics (cf. *People* v. *Baldwin*, 25 N Y 2d 66, 70; *People* v. *Herbison*, 22 N Y 2d 946, 947; *People* v. *Mills*, 31 A D 2d 433, 437). Defendant's admission that the "fix" was his was excluded at a pretrial hearing. Without the use of any of this evidence, the People have no case and the indictment must be dismissed. It is also my opinion that even if the entry and arrest had been lawful, the incidental search which uncovered the narcotics in the pillow case at a time when defendant was handcuffed and under guard by another officer went beyond the immediate area from which defendant might have gained possession of a weapon or destructible evidence and was, therefore, unlawful (*Chimel* v. *California*, 395 U. S. 752, 763); that the police chemist's testimony failed to establish defendant's guilt under the misdemeanor possession (in the fourth degree) count (cf. *People* v. *Pippin*, 16 A D 2d 635; *People* v. *Baker*, 7 A D 2d 707; *People* v. *Hicks*, 3 A D 2d 829); that prejudicial error was committed in permitting the police officer to testify to his observation of, and the significance attached to, "track marks"

on defendant's arms (cf. *People* v. *Birch,* 6 A D 2d 28, 29) ; and that reversible error was committed in permitting the People to peremptorily challenge a juror previously accepted (*People* v. *Grieco,* 266 N. Y. 48, 54–55; cf. *People* v. *Mancuso,* 22 N Y 2d 679). The judgment should be reversed and the indictment dismissed.