OPINION OF THE COURT
Frederic S. Berman, J.
May a police officer from a sister State, New Jersey, armed with a local arrest warrant issued by his State and with a Federal arrest warrant issued by a United States District Court sitting in New Jersey, effect an extrajurisdictional arrest in the New York apartment of a suspect wanted by the sister State and the United States Government?
This case presents an issue which, apparently, has not been addressed in any reported New York case.
The defendant, Sixto La Fontaine, asserts that New Jersey police officers unlawfully arrested him in his apartment because they had no authority beyond New Jersey’s territorial *753 limits to conduct arrests in New York State. Consequently, argues the defendant, the seizure of cocaine by the New Jersey police officers should also be deemed illegal, and such evidence should be excluded from the defendant’s trial in New York.
Conversely, the People contend that the defendant’s arrest was valid because, as private citizens, the New Jersey police seized the defendant and were, thus, entitled to arrest the defendant under CPL 140.30 (authorizing private citizen’s arrest). Additionally, the People aver that the New Jersey officers were entitled to seize the defendant as agents of the New York City Police Department. Finally, the prosecution claims that the narcotics were obtained under the "plain view” doctrine.
To resolve the contentions of the parties, on March 29, 1993, the court conducted a suppression hearing, during which the prosecution called Detective Ronald Humphrey, the sole witness to appear. He testified candidly and credibly.
FACTS
On November 18, 1992, Detective Humphrey, an 18-year member of the Paterson, New Jersey Police Department, who is a highly experienced officer, together with Detectives Caudrado, Maute, and Sergeant Stell, all of the Paterson Police Department, were assigned to execute a fugitive arrest warrant for the defendant and one Miguel Ortiz. Both suspects were wanted by the State of New Jersey for conspiracy to murder under New Jersey Statutes Annotated § 2C:5-2 (New Jersey Code of Criminal Justice) and aggravated assault under New Jersey Statutes Annotated § 2C:12-1 (b) (l).[1] In addition, the defendant was sought by the United States District Court, District of New Jersey, for a violation of 18 USC § 1073 (flight *754 to avoid prosecution or giving testimony).[2] Each of these three charges are felonies and were the bases of two arrest warrants, one issued by the Municipal Court of Paterson, New Jersey, on August 20, 1992, and the other issued on October 8, 1992, by a United States District Court sitting in Newark, New Jersey.[3]
In the morning of November 18, 1992, Humphrey and his colleagues went to the 34th Precinct in Manhattan. They apprised Precinct detectives that they had a fugitive warrant for the defendant and Ortiz, and that they suspected that the defendant and Ortiz had been sighted within the Precinct’s boundaries. They asked the 34th Precinct detectives for their help in locating the two alleged fugitives. Four 34th Precinct detectives joined the New Jersey officers in a fruitless search for the two suspects on 158th Street.
Upon returning to the Precinct after this search, the New Jersey police told the 34th Precinct detectives that the New Jersey police desired to continue their pursuit of the two fugitives within the Precinct’s confines. The 34th Precinct detectives issued the New Jersey police officers a police radio, and the latter officers, without their New York cohorts, returned to their pursuit on Broadway between 158th and 165th Streets.
During this pursuit, the New Jersey detectives met with an informant who led the detectives to apartment 34 of 600 West 163rd Street in Manhattan. Upon arriving in this building the New Jersey officers went to this third floor apartment. Humphrey and Maute went to the door of apartment 34, and Stell and Caudrado went to a fire escape landing which was located outside the apartment’s bedroom window.
At approximately 12:35 p.m. Humphrey and Maute knocked on the apartment door. Someone came to the door and asked who it was. The two detectives did not respond. Again, that same person demanded the identity of the person who had knocked on his apartment door, and the detectives identified themselves as the police. The door remained closed. The *755 detectives heard shuffling inside the apartment and then heard Stell and Caudrado say, "Halt.” Eventually, Stell and Caudrado arrested the defendant on the fire escape outside his apartment. Thereafter, the four New Jersey officers returned him to his apartment. Humphrey took custody of the defendant, escorted him into the kitchen, advised him of his Miranda rights, and brought him in front of a refrigerator. Also, Humphrey told the defendant that he was arrested under a fugitive warrant. Meanwhile, Humphrey’s colleagues searched in the apartment for Ortiz, but were unable to locate him therein.
While searching the defendant in the kitchen, Humphrey observed and eventually seized a six-to-eight-inch long coffee container and a "heater seal” which were on top of a refrigerator. The container held plastic baggies of cocaine and the heater seal is commonly used to seal plastic baggies.
At some point, the 34th Precinct was contacted, and units from that Precinct arrived at the address. The defendant was taken from the building by 34th Precinct officers to the Precinct station house. After returning to the Precinct, Humphrey gave to 34th Precinct Officer Vasquez the plastic baggies of cocaine and the heater seal, and again advised the defendant of his Miranda rights.
Ultimately, a New York County Grand Jury charged the defendant with two counts of criminal possession of a controlled substance in the third degree and one count of criminally using drug paraphernalia in the second degree in violation of Penal Law § 220.16 (1); § 220.16 (12) and § 220.50.
Additionally, Humphrey informed the court that, prior to November 18, 1992, on numerous occasions the detective had set up in New York City surveillance of Paterson residents who had allegedly purchased narcotics in New York City. Also, before November 18, 1992, the detective had executed warrants issued by the State of New Jersey in New York State. When executing those warrants, occasionally, the detective did so without the aid of New York law enforcement agents.
Finally, both parties stipulated that the New Jersey detectives were not acting as private citizens when they arrested the defendant and obtained the subject evidence.
LAW
SEARCH AND SEIZURE
Preliminarily, neither party contends that on November 18, *756 1992, the New Jersey police officers were in close or "hot” pursuit of the defendant under CPL 140.55 (Uniform Close Pursuit Act).
In dispute is whether the New Jersey police officers had the authority to arrest the defendant in New York State. In order to resolve this question, several critical subissues must be addressed under both Federal and New York State law:
(1) Were the New Jersey police officers "police officers” or private citizens when they engaged in the activity heretofore discussed?
(2) Were the New Jersey detectives agents of the 34th Precinct, thereby triggering automatic application of the Fourth Amendment via the "state action” principle?
(3) If the New Jersey detectives were not acting as agents of New York State but as private citizens, under the circumstances of this case, should the Fourth Amendment and the exclusionary rule, nevertheless, govern the conduct of the New Jersey detectives?
(4) If constitutional and exclusionary principles are indeed applicable to the case at bar:
(a) Did the arrest trigger the application of Payton v New York (445 US 573 [1980])? and
(b) If so, did the New Jersey and/or Federal arrest warrants) entitle the New Jersey police detectives to arrest the defendant in his own apartment?
LEGAL STATUS OF THE NEW JERSEY OFFICERS
Since the United States Supreme Court has determined that a Federal suppression court must apply New York State law to determine if a State law enforcement officer or private person has the power to arrest in New York State a person who has allegedly committed a Federal felony (United States v Di RE, 332 US 581 [1948]; United States v Swarovski, 557 F2d 40 [2d Cir 1977], cert denied 434 US 1045 [1978]), it follows logically that a State suppression court, when considering the same question, must also apply New York State principles. Also, in the absence of Federal authority on the status of foreign State officers, not in close pursuit, effecting an extraterritorial arrest in New York, State law must determine their status. In short, the law of this State will determine this subissue.
New York’s CPL 1.20 (34) (a) through (r) defines "police officer”. The most applicable provision is CPL 1.20 (34) (d):
*757 " 'Police officer.’ The following persons are police officers: * * *
"(d) A sworn officer of an authorized police department * * * of a city.”
Neither this particular subdivision nor any other under CPL 1.20 (34) deems a police officer from another State a "police officer” pursuant to the CPL. Under CPL 1.20 (34-a) (b) through (c) and 1.20 (36) (b), which define the "geographical area of employment” of certain police officers and "county”, New York City is the geographical area of employment for any police officer employed by an agency of New York City, i.e., the New York City Police Department. Plainly, as per these provisions, it can be reasonably inferred that New York City, and New York State (see, CPL 1.20 [34-a] [a]), are not the geographical areas of employment for Paterson, New Jersey police officers, or any police officers from States other than New York.
CPL article 2 defines "peace officers” who are of a different status under the CPL than police officers.[4] Police officers from foreign States operating extrajurisdictionally in New York State are not included in the definition of "peace officer” under the CPL.[5]
Even though the CPL permits sister State police officers to apprehend suspects in New York State under the Uniform Close Pursuit Act (CPL 140.55),[6] the CPL does not offer any guidance as to the status of powers of foreign State police officers who are not closely pursuing suspects in New York State. And, there are no reported New York cases which provide such guidance.
However, there is case authority from other States. Essentially, these cases hold that a police officer acting as such may only effect arrests within the State which bestows upon such officer the power to arrest. (See generally, 6A CJS, Arrest, § 53 *758 [a]; 5 Am Jur 2d, Arrest, § 50; Bassiouni, Citizen’s Arrest [1977]; see also, State v Slawek, 114 Wis 2d 332, 338 NW2d 120 [1983]; cf., Graham v State, 560 P2d 200 [Okla Cr 1977].) Consequently, a police officer from one State, not in close pursuit, may not effect an arrest in another State unless a private citizen may do so in such State. (See generally, 6A CJS, Arrest, § 53 [a]; 5 Am Jur 2d, Arrest, § 50; Bassiouni, op. cit.; State v Slawek, supra; see also, State v Stevens, 26 Conn App 805, 603 A2d 1203 [1992], affd 224 Conn 730, 620 A2d 789 [1993]; Commonwealth v Gullick, 386 Mass 278, 435 NE2d 348 [1982].)
In view of these authorities, this court agrees with the People, and is persuaded to hold that any police officer from a foreign State, who is not in close pursuit of a suspect and who effects an extraterritorial arrest of that suspect in New York State, is a private citizen for the purpose of Fourth Amendment analysis. Thus, under the circumstances presented in this case, the New Jersey detectives were private citizens, not police officers or peace officers, when they engaged in the activities described by Detective Humphrey, and they had the same power to arrest as do private citizens under CPL 140.30.
Although the court may apply CPL 140.30 to this case to determine the validity of the defendant’s arrest, such application would be meaningless because this statute does not provide a remedy for a violation under this section. Consequently, the Fourth Amendment must be controlling because it furnishes a remedy for its transgressions: exclusion of evidence at trial.
STATE ACTION
Having found the New Jersey officers to be private citizens, the court must next determine if they were agents of the New York City Police Department. If they were, then the Fourth Amendment would automatically apply under the "state action” principle. (People v Esposito, 37 NY2d 156 [1975].) If they were not, in the following section the court will consider whether the Fourth Amendment and the exclusionary rule, nevertheless, should apply pursuant to the "under color of authority” doctrine.
In the case at bar, the court does not deem the New Jersey police officers to have been agents of New York State under the Fourth Amendment. New York City police officers did not participate in the defendant’s arrest and the acquisi *759 tion of the contraband, nor were they even in the defendant’s apartment during the defendant’s arrest and the search for and seizure of the alleged narcotics. (Lustig v United States, 338 US 74 [1949]; Corngold v United States, 367 F2d 1 [9th Cir 1966].) When the 34th Precinct issued their New Jersey counterparts a police radio, it can be reasonably inferred from the record that the 34th Precinct knew only that the New Jersey police officers sought the defendant for a homicide in New Jersey, and were not aware of any violation of New York State law perpetrated by the defendant. There is no evidence in the record that any New York City police officer either encouraged the New Jersey police officers to search the defendant’s apartment for contraband or acquiesced in the performance of such activity. (United States v Gumerlock, 590 F2d 794 [9th Cir 1979] [en banc]; United States v Bennett, 709 F2d 803 [2d Cir 1983], cert denied 469 US 1075 [1984].) The mere issuance of a radio, which apparently was not utilized by Detective Humphrey during his "search” of the top of the refrigerator and the recovery of the narcotics therefrom, in this case did not constitute the 34th Precinct’s explicit or implicit consent to conduct a search within the Precinct’s confines. Essentially, the discovery and seizure of the contraband by Detective Humphrey were acts "motivated * * * by a unilateral desire to aid in the enforcement of [New York] law.” (United States v Gumerlock, 590 F2d, at 800, supra.) And, the mere surrender of this evidence by the New Jersey police to an officer from the 34th Precinct did not transform the former officers into agents of the New York City Police Department. (People v Adler, 50 NY2d 730 [1980].) Therefore, since no New York State law enforcement agency participated in the defendant’s apprehension and the acquisition of the narcotics, there was no State action under the Fourth Amendment.
APPLICATION OF EXCLUSIONARY RULE TO OUT-OF-STATE POLICE OFFICERS EFFECTING EXTRATERRITORIAL ARRESTS
Since the court has deemed the New Jersey detectives private citizens and not New York State agents under both Federal and State law, precedent would appear to dictate that the Fourth Amendment does not apply to their conduct in the instant case.
However, this court is persuaded to hold that any out-of- *760 State police officer, not in close pursuit, who invokes the "color or authority of her office” to effect an extrajurisdictional arrest in New York State is not to be treated as a private citizen for purposes of Fourth Amendment analysis. (See, Collins v State, 143 So 2d 700 [Fla App 1962], cert denied 148 So 2d 280 [Fla 1962]; State v Phoenix, 428 So 2d 262 [Fla App 1982], affd 455 So 2d 1024 [Fla 1984]; State v Filipi, 297 NW2d 275 [Minn 1980].) Consequently, such apprehension falls within the ambit of the Fourth Amendment and the exclusionary rule.
Although there is no Federal or New York State case or statutory authority which applies to the scenario presented by the instant case, the court’s holding appears to be consistent with State constitutional concerns, particularly under New York’s search and seizure law (NY Const, art I, § 12.)[7] (See, United States v Swarovski, supra; United States v Di RE, supra.) "State Constitutions in general, and the New York Constitution in particular, have long safeguarded any threat to individual liberties, irrespective of from what quarter that peril arose.” (Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 160 [1978] [emphasis added].) Plainly, foreign State police officers, unversed in New York State penal and criminal procedural law, pose as much, if not more, of a threat to the rights and liberties of individuals within New York’s borders as do police and peace officers from New York’s law enforcement agencies. An out-of-State police officer who exerts his authority as a police officer in New York State is in a better position to arrest a suspect than a private citizen who has no such authority to exert. Concomitantly, a suspect, when confronted by an out-of-State police officer who utilizes the indicia of his office, i.e., a police badge or the identification of herself as a police officer, to effect an extrajurisdictional arrest, is more likely to surrender that suspect’s cherished liberty than he would have if a private citizen were attempting to arrest *761 him. In light of our State constitutional jurisprudence, which traditionally has underscored the primacy of individual rights and liberties and due process over any other concerns, this court is not persuaded to treat as private citizens foreign State police officers who operate extraterritorially in New York State. (See, Sharrock v Dell Buick-Cadillac, supra; People v P. J. Video, 68 NY2d 296 [1986]; People v Harris, 77 NY2d 434 [1991].) They should be treated as police officers under the Fourth Amendment through the application of NY Constitution, article, I, § 12. To do otherwise would place the conduct of such officers beyond the reach of the Fourth Amendment and the exclusionary rule, would be inconsistent with New York’s inexorable commitment to safeguarding the civil rights of its populace, and would run counter to common sense. (Phoenix v State, 455 So 2d 1024 [Fla], supra.)
To be sure, it can be argued that applying the Fourth Amendment and the exclusionary rule to foreign State officers acting extrajurisdictionally in New York State will have little deterrent effect on such officers, who serve as police officers primarily within the boundaries of their own States and who are subject to the suppression rules of those States. However, such a contention overlooks the fact that New York State, given its size, location, and geography, is an ideal State in which a fugitive from another State may hide or in which such an absconder may use New York’s numerous modes of transportation to move within the State, depart to other States, or even to leave the United States. Obviously, such fugitives, like the defendant, frequently draw the interest and pursuit of out-of-State police agents in New York State. Indeed, according to Detective Humphrey, in New York State he has conducted many investigations and surveillance operations and has executed extraterritorially New Jersey arrest warrants. It is not too much to require that officers, like Humphrey, who frequently conduct police business in New York State abide by the mandate prohibiting unreasonable searches and seizures. Plainly, such an officer would be deterred by the application of the exclusionary rule to any evidence illegally acquired by him in our State and sought to be introduced in our State courts.
In fact, a failure to apply State constitutional protections against these foreign State police officers amounts to an acceptance of the "silver platter” doctrine whereunder a foreign State police officer, not in close pursuit of a suspect and acting extraterritorilly in New York State, illegally ar *762 rests that suspect, unlawfully seizes evidence from him, and surrenders it on a silver platter to New York State authorities. (Cf., Elkins v United States, 364 US 206 [1960] [abrogating in all Federal cases the silver platter doctrine under which State law enforcement agents not acting on behalf of the Federal Government had been permitted to turn over to the same evidence obtained in violation of the Fourth Amendment]; see also, Bassiouni, Citizen’s Arrest 34 [1977].) In view of New York State constitutional concerns for civil rights and liberties, this court deems it necessary to extend the silver platter proscription, and the Fourth Amendment to the conduct of such sister State officer through NY Constitution, article I, § 12. (Contra, State v Mollica, 114 NJ 329, 554 A2d 1315 [1989] [refusing to extend New Jersey Constitution to govern the conduct of officers from another State, and declining to apply the "silver platter” doctrine to the seizure of evidence in Illinois by Illinois police officers, which evidence was used in a criminal trial in New Jersey].)
Consequently, in applying the "under color of authority” principle to the facts of this case, the court finds that the New Jersey police detectives were exerting the powers of their office when they arrested the defendant. In the instant case, the New Jersey detectives announced that they were the police before entering the defendant’s apartment. Believing the New Jersey detectives to be police officers and not private citizens, the defendant surrendered his privacy interest in his residence by attempting to flee the police via his fire escape. The New Jersey detectives explained to the defendant that they had a fugitive warrant for his arrest, and, both inside the defendant’s apartment and at the 34th Precinct, Detective Humphrey administered Miranda warnings to the defendant. At all times the New Jersey detectives exerted the power of their office to seize the defendant and to obtain evidence. They acted like police officers, not like private citizens, and the defendant’s behavior reflected his reasonable belief that they were police officers. Clearly, a private citizen, without the power to act "under color of office”, would not have been in any position to have arrested the defendant in this case. Pursuant to this court’s holding, the conduct of the New Jersey Police Department triggers the application of the Fourth Amendment.
APPLICATION OF CONSTITUTIONAL PRINCIPLES
Since the Fourth Amendment applies to the conduct of the *763 New Jersey officers, the court must next address the legality of the defendant’s arrest under this amendment.
Although the defendant was arrested on his fire escape, he essentially was "compelled [and] coerced by police authority to forego the inviolability of his home.” (People v Roe, 136 AD2d 140, 143 [3d Dept 1988], affd 73 NY2d 1004 [1989]; cf., United States v Al-Azzawy, 784 F2d 890 [9th Cir 1985], cert denied 476 US 1144 [1986].) Thus, the apprehension of the defendant on his fire escape was the functional equivalent of an arrest inside his apartment.
Pursuant to the principles enunciated in Payton (445 US 573, supra) and Collins (143 So 2d, at 703, supra [an officer who is acting under the color of her authority must have a legal basis upon which to justify an entry into a person’s home]), the New Jersey detectives, who were acting under color of office, were entitled to arrest the defendant in his home only if either they had an arrest warrant, secured the defendant’s consent to enter his abode, or if exigent circumstances had been present. Clearly, the New Jersey police did not have the defendant’s consent to enter the defendant’s home, and there were no exigent circumstances justifying his arrest. Indeed, the People do not contend otherwise.
Therefore, only an arrest pursuant to a warrant validates the defendant’s seizure in this case. Here, the New Jersey police took the defendant into custody pursuant to two arrest warrants, one issued by a Paterson, New Jersey court, and the other by a Federal district court sitting in New Jersey. Turning to the New Jersey warrant first, this court holds that this warrant does not validate the defendant’s arrest. First, a New Jersey warrant may only be executed within the State of New Jersey. (NJ Stat Annot § 3:3-3 [b].) Thus, the New Jersey warrant is invalid if executed beyond New Jersey’s borders. Second, CPL 120.10 (1) authorizes a police officer or a peace officer appointed by New York State to execute an arrest warrant issued only by a criminal court of New York State. (See, CPL 10.10 [1], [3].) Certainly, a warrant issued by a New Jersey State court does not fall within the definition of warrant under CPL 120.10 (1), thereby rendering this provision inapplicable.[8] And, generally, "[a] warrant of arrest issued in one state may not be executed in another state, for it has no *764 validity beyond the boundaries of the state by whose authority it was issued.” (6A CJS, Arrest, § 53 [a]; but see, Allen v Wrightson, 800 F Supp 1235 [D NJ 1992] [holding that in the extradition context the Fourth Amendment and Payton rights of a defendant, who was arrested in his New Jersey home by a New Jersey law enforcement agent and pursuant to a New York bench warrant, were protected by the issuance of such warrant].)
However, in this case the Federal warrant serves to validate the arrest of the defendant. Pursuant to the Federal Rules of Criminal Procedure, rule 4 (d) (2), a Federal arrest warrant of the type issued in this case may be executed within the jurisdiction of the United States. Thus, the Federal warrant was executable in New York State, which is certainly within such jurisdiction. Also, under Federal Rules of Criminal Procedure, rule 4 (d) (3), the officer executing the arrest warrant need not have the warrant in her possession at the time of arrest.
But, who may execute such a warrant? Under Federal Rules of Criminal Procedure, rule 4 (d) (1), a Federal arrest warrant must be executed by a marshal "or by some other officer authorized by law” (emphasis added).
The Second Circuit provides some instruction on this question in Swarovski (557 F2d 40, supra). In addressing the validity of a warrantless arrest by a customs agent, the Swarovski court considered the issue as to who may effect an arrest for a Federal felony. The determination of this question was predicated on a construction of New York State case law, because there was no applicable Federal statute which covered this issue. The Swarovski court examined People v Floyd (56 Misc 2d 373 [1968], affd 33 AD2d 795 [2d Dept 1969], revd 26 NY2d 558 [1970]) and determined that New York law "recognize[s] that an arrest for a federal felony, made by a peace officer or by a private person in the State of New York is valid.” (557 F2d, at 46 [citations omitted].)
Under Floyd (supra), which held that a New York City police officer could arrest a suspect known by that officer to be the subject of a Federal arrest warrant, and Swarovski (supra) a police officer from any New York State law enforcement agency may arrest the subject of a Federal arrest warrant. (See also, United States v Janik, 723 F2d 537 [7th Cir 1983] *765 [holding that Illinois police officers have implicit authority to make Federal arrests].) And, Swarovski also holds that under CPL 140.30, a private person may effect an arrest of another who is in the process of or who has just committed a Federal felony. But, neither Swarovski nor Floyd address whether a foreign State officer may, beyond her jurisdiction, execute a Federal arrest warrant in New York, and there are no New York State authorities which address this issue.
Nevertheless, this court holds that a police officer from another State, not in close pursuit, may execute a Federal warrant extraterritorially in New York State. First, this court relies upon the teachings of Swarovski (supra), Floyd (supra), and, also, United States v Bowdach (561 F2d 1160 [5th Cir 1977] [en banc]), which held that 18 USC § 3041 (power of courts and Magistrates):[9] "indicates that state law enforcement officers have the power to arrest citizens for crimes against the United States, and this would be especially true when the state officers have knowledge of the fact that the person being arrested is wanted by federal authorities and that a federal arrest warrant has been issued for that person’s arrest.” (561 F2d, at 1168.) Second, because a Federal arrest warrant may be executed anywhere within the jurisdiction of the United States, there is no authority which precludes foreign State police officers, acting as such, from executing Federal arrest warrants in New York State. Third, if, as Swarovski holds, a private person in New York State may effect a warrantless citizen’s arrest of a person suspected of having committed a Federal felony, perforce, a police officer from a foreign State, acting in his capacity as a police officer, may arrest a person pursuant to a valid Federal arrest warrant. Finally, since, as this court holds, a foreign State police officer who, while not in close pursuit, apprehends a suspect extraterritorially in New York State, is subject to the same Fourth Amendment and NY Constitution, article I, § 12 scrutiny as is a New York State police officer, such sister State officer, like his New York State counterpart under the Swarovski rule, has the power to arrest a suspect based on a Federal arrest warrant. (Cf., People v Floyd, supra.)
Thus, in the instant case, the New Jersey detectives were entitled to execute in New York State the Federal arrest *766 warrant charging the defendant with a Federal felony. Consequently, the defendant’s arrest in his apartment was legal because it was predicated on a Federal arrest warrant.
SEIZURE OF EVIDENCE
The court determines that Detective Humphrey inadvertently discovered the seized contraband and was entitled without a warrant to recover the same pursuant to the "in plain view” doctrine. (Coolidge v New Hampshire, 403 US 443 [1971].)
CONCLUSION
In light of the foregoing, the defendant’s motion to suppress physical evidence and statements is denied in all respects.

. Under New Jersey Statutes Annotated § 2C:l-4 (a) (classes of offenses); § 2C:5-4 (A) (grading of conspiracy); § 2C:ll-3 (b) (murder); § 2C:43-6 (sentence of imprisonment for crime; ordinary terms; mandatory terms), conspiracy to commit murder is a crime of the second degree and may carry with it a prison term of between 5 and 10 years. Pursuant to New Jersey Statutes Annotated § 2C:l-4 (a) (classes of offenses); § 2C:12-1. (B) (1) (aggravated assault); § 2C:43-6 (a) (2) (sentence of imprisonment for crime; ordinary terms; mandatory terms), aggravated assault is a crime of the second degree and a person convicted for this crime may be faced with the same sentencing exposure as a person convicted for conspiracy to murder.
These offenses were allegedly committed on August 16, 1992.

. 18 NYCRR § 1073 (flight to avoid prosecution or giving testimony) is a class E felony for which an offender thereunder may be sentenced to a term of imprisonment not to exceed five years. (18 USC §§ 1073, 3559.)
This crime was allegedly perpetrated on August 21,1992.

. On March 29, 1993, the prosecution submitted for the court’s consideration copies of both the New Jersey and Federal warrants, and documents pertaining to the Federal warrant. The warrants and their supporting papers are hereby incorporated into the hearing record.

. In most foreign States, law enforcement agents defined as police officers under New York State law are referred to as "peace officers”.

. CPL 2.15 designates as peace officers various law enforcement agents including F.B.I. agents (CPL 2.15 [1]) and United States Marshals (CPL 2.15 [4]).

. This provision is binding only on police officers from States which have enacted similar close pursuit statutes. (CPL 140.55 [6].) Upon examining chapter 155 (Uniform Fresh Pursuit Law) of New Jersey’s Administration of Justice Provision (NJ Stat Annot § 2A:155-1 ef seq.) the court is satisfied that New Jersey’s Uniform Fresh Pursuit Law is similar to its New York State counterpart.

. NY Constitution, article I, § 12 states: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” This provision, which is identical in language to that in the Fourth Amendment, has been held to be inapplicable to the conduct of private citizens. (People v Horman, 22 NY2d 378 [1968]; see also, Sackler v Sackler, 15 NY2d 40 [1964]; People v Gleeson, 36 NY2d 462 [1975].) However, there is no New York case law which addresses the applicability of NY Constitution, article I, § 12 to the scenario presented by this case.

. Also, neither the New Jersey nor the Federal warrant were "warrants” under CPL 570.32 (Uniform Extradition Act), which authorizes the issuance of a warrant by a New York State local criminal court for the *764 arrest in New York State of a fugitive sought by a sister State prior to the issuance of a formal arrest requisition from such State.

. 18 USC § 3041 authorizes the Mayor of a city to arrest and imprison anyone suspected of having violated any Federal penal law. Bowdach (supra) held that local police officers as agents of the Mayor also possess such authority.