Robert J. Cimino, Esq. Informal Opinion County Attorney No. 2000-1 County of Suffolk P. O. Box 6100 Hauppauge, N Y 11788-0099
Dear Mr. Cimino:
You have asked whether New York law enforcement officials are authorized to make warrantless arrests for violations of the federal Immigration and Nationality Act ("INA" or "Act"). 8 U.S.C. ch. 12. There is no definitive authority in the New York state courts holding that state and local police officers may make warrantless arrests for federal crimes. However, it appears likely that if the question were to be presented directly, the state courts would so hold.
If state and local officers do have such authority under state law, the INA permits them to arrest an individual without a warrant where the arresting officer has probable cause to believe that the individual has committed a criminal violation of the Act. Importantly, reasonable belief that a person has committed a civil violation of the Act does not provide a valid basis for an arrest. Therefore, a person's status as illegally present in the country, which is a civil violation of the INA, without evidence that the person illegally entered the United States (a violation of the criminal provisions of the Act), does not, perforce, provide probable cause that the person is subject to arrest for violation of any criminal provision.
Power Under State Law of State and Local Law Enforcement Officersto Make Arrests for Federal Crimes
Criminal Procedure Law §§ 140.10, 140.25
and 140.30 provide broad authority for police officers, peace officers and "any person," respectively, to make arrests without warrants in defined circumstances. Most relevant here is section 140.10, which authorizes a police officer to make a warrantless arrest whenever he has reasonable cause to believe that a person has committed an "offense" in his presence, or that a person has committed a "crime," either in or out of the officer's presence.[1] "Offense" is defined in Penal Law §10.00(1) (and made applicable to the Criminal Procedure Law by CPL § 1.20) as conduct made punishable by a state or local law by a sentence of imprisonment or a fine. "Crime" is defined as a misdemeanor or a felony, Penal Law § 10.00(6), which in turn are defined as particular kinds of offenses.[2]
There is substantial support for the position that the Penal Law and the Criminal Procedure Law, although explicitly referring only to state and local crimes, do not exclude federal crimes from the scope of authority granted to police officers and others to make warrantless arrests. It must be noted, however, that almost all of the support for this proposition is from the Second Circuit and that there is no state court opinion that directly so holds.
The most analogous state case is People v. Floyd, 56 Misc.2d 373 (Queens Co. Sup. Ct. 1968), aff'd, 33 A.D.2d 795 (2d Dep't 1969), rev'd on othergrounds, 26 N.Y.2d 558 (1970). In Floyd, the lower court approved an arrest by a New York City police officer of a person against whom there was an outstanding federal warrant. The court rejected the arguments that the arrest was invalid because the officer did not have the warrant in his possession and because, as a local officer, he did not have the authority to execute a federal warrant. In rejecting the latter argument, the court observed that the arrest could also be justified as a warrantless citizen's arrest for a felony. See 56 Misc.2d at 376. The court did not, however, specifically refer to any New York law in this regard. See also People v. Alvarez, 84 Misc.2d 897 (Sup.Ct. N.Y. Co. 1975) (court invalidated arrest of defendant by local police on federal immigration charges for lack of probable cause; court did not question officers' authority to make proper arrest).
The most extensive discussion of this issue is found in United States v.Swarovski, 557 F.2d 40 (2d Cir. 1977), cert. denied, 434 U.S. 1045
(1978). In Swarovski, federal customs agents made a warrantless arrest of a defendant caught illegally exporting a military camera. Because the federal agents did not have authority under federal law to make the arrest, they invoked the citizen's arrest authority provided by section140.30 of the New York Criminal Procedure Law. The principal issue in the case was whether the Penal Law and the Criminal Procedure Law provide authority for a citizen's arrest for violations of federal law, even though federal crimes are not, as indicated above, specifically referred to in those statutes. The court reviewed the long history of federal law enforcement by state and local officers in New York as set forth in its own past decisions, such as Marsh v. United States, 29 F.2d 172 (2d Cir. 1928) (upholding arrest of defendant by state officer for federal misdemeanor under New York law), and United States v. Burgos, 269 F.2d 763
(2d Cir. 1959) (upholding arrest of defendant by federal customs agents on immigration charges under New York's citizen's arrest provision), and the evolution of the language of the New York statutes. It concluded that the statutes do provide such authority:
 In sum, the great weight of opinion in the federal courts and in the courts of the State of New York, as well as the under-standing and practices of the executive branches of the federal and state governments is to the effect that the statutory provisions of the State of New York which authorize arrests by private persons of another person who is in the act of committing or has in fact just committed a felony in the State of New York, include felonies under the laws of the United States as well as those under the laws of New York.
Swarovski, 557 F.2d at 46-48, citing United States v. DiRe, 332 U.S. 581,589, 591 (1948), and United States v. Watson, 423 U.S. 411, 420-421
(1976).
In Swarovski, the court rejected the reasoning of the district court, which had held that the change in wording of the definition of "offense" by the New York Legislature when the Penal Law was recodified in 1965 (see Laws of 1965, ch. 1030) to include the language referring to state and local law, was meant to exclude federal felonies. The court examined the legislative history and found:
 We are entirely unpersuaded that the Legislature of the State of New York, in recodifying the criminal procedure law and the penal law of the State, either intended to or did in fact, dissolve all participation by the executive and judicial branches of the State government in dealing with federal criminal offenses . . . to the extent and degree that it has developed for nearly 100 years . . . and has become the established practice recognized by the executive and judicial branches of the State and Federal Governments. . . . There is not a scrap of legislative history to show that the termination of such participation was ever contemplated. . . . There is nothing . . .[to] suggest that the purpose of the definitions was in whole or in part to bring to an end the State's participation in the apprehension and delivery of federal offenders to the appropriate federal authorities. The New York State Legislature could, of course, have codified the interpretation of existing statutes to include the right to arrest federal felons, but this was hardly necessary in the light of 200 years of a well developed custom and a pattern of state participation and cooperation in arresting, and placing in federal custody, violators of federal criminal law in the State, a practice which is now so vital and important in any high crime area of the nation.
Id. at 47-48.
Thus, although the question is not definitively settled in the state courts, it appears unlikely that the courts would decide that state and local officers lack the authority to make arrests for violations of federal criminal law.
Arrests By State and Local Officers For Violations of the INA AreNot Preempted
The question remains whether the INA itself preempts applicable state law and precludes enforcement of its terms by state and local officers.
We have found no provision of the Act that expressly precludes or limits its enforcement by state authorities. On the contrary, the only INA provisions we have found that specifically address this matter, 8 U.S.C. § 1252c and 1324(c), affirmatively authorize state and local enforcement under certain circumstances.
Section 1252c authorizes, to the extent permitted by state and local law, state and local law enforcement officials to arrest illegal aliens who have previously been convicted of a felony and have been deported or left the country after conviction. Such arrests may be made only after the local official confirms the individual's status with the Immigration and Naturalization Service ("INS") and only for the period of time necessary for the INS to take custody.
Section 1324(c) authorizes "all other [i.e., other than INS employees] officers whose duty it is to enforce criminal laws" to arrest persons for violating subdivision (a) of that section, which imposes criminal penalties for transporting and harboring illegal aliens.
The Ninth and Tenth Circuits have rejected arguments that, by specifically providing for state and local enforcement in these sections, Congress intended to preempt enforcement of the Act by state or local authorities under state law. In Gonzales v. City of Peoria, 722 F.2d 468,472-475 (9th Cir. 1983), overruled in part on other grounds,Hodgers-Durgin v. De La Vina, 199 F.3d 1037 (9th Cir. 1999), the court rejected such a claim with respect to § 1324. The court decided that local peace officers could enforce any of the criminal provisions of the INA:
 Although the regulation of immigration is unquestionably an exclusive federal power, it is clear that this power does not preempt every state activity . . .
 . . .
 The City's claim of authority is limited. It asserts only the power to enforce the criminal provisions of the federal immigration laws. There is nothing inherent in that specific enforcement activity that conflicts with federal regulatory interests. Federal and local enforcement have identical purposes — the prevention of the misdemeanor or felony of illegal entry. The subject matter of the regulation thus does not require us to find that state enforcement is preempted.
Gonzales, 722 F.2d at 474.
Similarly, in United States v. Vasquez-Alvarez, 176 F.3d 1294, 1297 (10th Cir.), cert. denied, 120 S.Ct. 264 (1999), the Tenth Circuit rejected the claim that unless a warrantless arrest by state or local officers fits within the parameters of § 1252c, it is unauthorized. In rejecting this claim, the court noted that federal courts had long held that state and local law enforcement officers are empowered to make arrests for violations of federal law, including violations of the INA, if the arrest is authorized by state law. Id. at 1296. While § 1252c did not provide a basis for the arrest, the court concluded that the section does not affect the authority of state law enforcement officers to investigate and make arrests for violations of the INA under the laws of Oklahoma.Id. at 1295. Section 1252c merely creates an additional vehicle for enforcement of the Act. Id.
Accordingly, we conclude that the INA does not preempt the authority of state and local officials to make warrantless arrests for criminal violations of the INA, insofar as such activity is authorized by state and local law.
State and Local Enforcement Authority is Limited to the CriminalProvisions of the INA
The INA provides criminal penalties (fines and/or imprisonment) for violation of some of its substantive provisions. See, e.g.,8 U.S.C. § 1253(a) (disobeying a removal order); § 1306 (offenses relating to registration of aliens); § 1324(a) (transporting illegal aliens); § 1324a(f) (engaging in a pattern or practice of hiring illegal aliens); § 1325(a) (illegally entering the country). However, the INA also provides that violations of some provisions are punishable by civil penalties. See, e.g., 8 U.S.C. § 1229c(d) (failure to depart voluntarily after agreeing to do so); § 1253(c) (penalties relating to vessels and aircraft). Also, it appears that some violations may result in no sanction other than deportation. See 8 U.S.C. § 1227
(defining who is a deportable alien).
As described earlier, the authority for state and local officers in New York to enforce the INA comes from the Criminal Procedure Law. The authority so given sanctions a warrantless arrest for an "offense," which is conduct punishable by a sentence of imprisonment or a fine. See Penal Law § 10.00(1). It necessarily follows that state and local officers have no authority to arrest an individual under the INA unless the officers have probable cause to believe that the individual has violated one of its provisions that calls for a criminal penalty, rather than just a civil penalty or deportation.
The Ninth Circuit recognized these differences in Gonzales. There, the court emphasized that not all "illegal aliens" may be arrested by local law enforcement officers under state law authorizing arrests without warrants for criminal violations. 722 F.2d at 476. Under the Act, "illegal alien" may mean an alien who has illegally entered the country, which is a criminal offense under § 1325, or an alien who legally entered but is illegally present in the United States, which may be only a civil violation. Id. The court noted that there are many reasons why an alien may be present illegally, such as overstaying a visitor's visa, failing to maintain student status or acquiring prohibited employment, that do not involve a criminal offense. The distinction is important because, as noted, enforcement of the INA by state and local officers in New York is limited to the INA's criminal provisions. Thus, reasonable belief that an alien is undocumented or illegally present does not provide a reasonable basis for an arrest based on the belief that acriminal violation of the Act (such as illegal entry) has occurred.
This point was critical to a decision in at least one New York court. InPeople v. Alvarez, 84 Misc.2d 897 (Sup.Ct. N.Y. Co. 1975), the defendant, who was admittedly an illegal alien, was arrested by New York City police detectives. The court found that the defendant's status as an illegal alien did not provide the officers with probable cause to arrest him. "In the absence of knowledge of any facts which detail the specific circumstances by which the defendant . . . became an illegal alien, it is impossible to find that a felony or even an offense" was actually committed. Id. at 900-901. "Status as an illegal alien does not per se constitute an offense or a crime for which a sentence to a term of imprisonment or a fine is provided as defined in [Penal Law §10.00(1)]. . . ." Id. See also Gonzales, 722 F.2d at 476 (noting that arresting a person for a civil violation of the Act would not be authorized under Arizona law).
Our preliminary review of the federal law has not located any authority in the INA for state law enforcement officers to enforce the civil provisions of the Act, and no such authority has been cited to us. There is a provision in the INA, 8 U.S.C. § 1357(g), that allows the United States Attorney General to enter an agreement with a state whereby state officers are delegated the powers of a federal immigration agent. There is no such agreement in place here. The U.S. Attorney General also has the power to authorize state and local law enforcement officers to perform any of the duties of an employee of the INS in emergency situations. See 8 U.S.C. § 1103(8). The U.S. Attorney General has taken no such action here.
Finally, we note that any exercise of the authority we believe state and local officers have to enforce the criminal provisions of the INA is subject to all federal and state constitutional requirements with respect to arrests, detentions and investigatory stops. Gonzales,722 F.2d at 477. Therefore, actions purportedly taken to enforce the Act that are based solely on race, for example, would be impermissible. United Statesv. Avery, 137 F.3d 343, 355 (6th Cir. 1997).
Conclusion
New York State law enforcement officials may make arrests without warrants for criminal violations of the federal Immigration and Nationality Act. However, mere status as an alien, or even as an illegal alien, may only be a civil violation of the Act and thus would not be a sufficient basis for an arrest. For a valid arrest, the officer must have probable cause to believe that the person has committed a criminal violation of the INA, such as illegal entry into the United States, and not merely a civil violation, such as illegal presence in the country.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE, Assistant Solicitor General
In Charge of Opinions
[1] Sections 140.25 and 140.30 similarly authorize arrests for "offenses" and "crimes" but with further limitations.
[2] A "misdemeanor" is an offense, other than a traffic infraction, for which a sentence to a term of imprisonment in excess of fifteen days may be imposed, but for which a sentence to a term of imprisonment in excess of one year cannot be imposed; a "felony" is an offense for which a sentence to a term of imprisonment in excess of one year may be imposed. Penal Law § 10.00(4), (5).