*967 OPINION OF THE COURT
George D. Marlow, J.
This decision follows a hearing pursuant to CPL 710.60 (4) on defendant’s motion to suppress physical evidence. The issues raised are whether a Town of Poughkeepsie police officer acted within his jurisdictional authority when, beyond the geographic area of his employment, he stopped and questioned defendant; and whether he had a reasonable suspicion to do so (CPL 140.50 [1]).
For the reasons that follow, defendant’s motion is granted.
THE FACTS
Town of Poughkeepsie Police Officer Eric Lindmark was on patrol at 1:35 a.m. on October 9, 1992, on the westbound arterial highway within, and near the perimeter of the Town of Poughkeepsie, when he noticed defendant riding a bicycle and carrying a rectangular object under his arm. Apparently, he was having some difficulty holding on to the object.
Before his tour of duty began that day, Lindmark’s superior had instructed him to patrol, and provide police visibility in that same area of the Town because it had recently experienced a rash of burglaries.
After watching defendant, Lindmark drove around a block and returned to the arterial, resuming his visual observation from a stationary vantage point still inside the Town, this time with binoculars. He sat for approximately five minutes and studied Edmonds as he pedaled in a westerly direction, stopping every so often to reposition the object, finally crossing the border from the Town into the City of Poughkeepsie.
From this point forward, all relevant events took place in the City of Poughkeepsie and, concededly, outside the geographical boundaries of the Town.
Just moments later, Officer Lindmark also crossed into the City, while still in his vehicle, approached defendant and said, "Hello,” also asking defendant, "What’s your name?” Lind-mark further asked, "Where are you headed tonight?” Just before posing these questions, but after he entered the City, Lindmark was able to discern that the rectangular object, partially wrapped by a cloth cover and with a cord hanging from it, was a video cassette recorder (VCR).
In response to the questions, defendant haltingly uttered the name "John”, and said he was going home. When asked *968 further about the VCR, he supplied information about where he obtained it, information the police officer knew was false. By that time, backup Detective Robert McCready had arrived on the scene.
At this point, defendant acceded to Lindmark’s request to show him the VCR. After handing it over, defendant suddenly pushed his bicycle into McCready, fled on foot over a fence, and left the VCR and bicycle behind.
The police located defendant in the City of Poughkeepsie in less than 30 minutes, and Officer Lindmark identified him. Defendant was then arrested when a subsequent burglary report identified the VCR as an item stolen. Consequently, Edmonds was indicted for burglary, criminal possession of stolen property, and obstructing governmental administration.
OPINION
Defendant first contends the officer’s initial stop of him was unlawful because it occurred outside the Town of Poughkeepsie, thereby violating CPL 140.50 (1). He next claims the police officer lacked the necessary factual basis to stop and question him regardless of whether it was unauthorized as outside the officer’s geographical jurisdiction. He therefore urges the court to suppress all evidence consequentially acquired.
CPL 140.50 (1) permits a police officer to "stop a person in a public place located within the geographical area of such officer’s employment when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor defined in the penal law, and may demand of him his name, address and an explanation of his conduct.” (Emphasis added.)
It is undisputed Officer Lindmark first saw defendant in the Town of Poughkeepsie, but that he first approached and questioned defendant after defendant had traveled just over one block into the adjoining City of Poughkeepsie.
CPL 1.20 (34-a) (b) defines "geographical area of employment” as the "county, city, town or village” whose agency employs a police officer — in this case the Town of Poughkeepsie, not the adjoining City of Poughkeepsie.
Defendant argues that by approaching, stopping, and questioning him within the City of Poughkeepsie, Lindmark violated CPL 140.50 (1), and therefore any resulting evidence must be suppressed. The court is constrained to agree.
At common law, police officers had the authority to stop and *969 briefly detain a person whose behavior was suspicious, a right possessed by all police officers. (People v Hollman, 79 NY2d 181; People v De Bour, 40 NY2d 210.) CPL 140.50 (1) spatially limits an officer’s involvement in this investigative medium to his or her geographical area of employment — here, to the Town of Poughkeepsie.
In Brewster v City of New York (111 AD2d 892), although in a civil setting, the court explicitly declared that a police officer’s power to stop and question a person, based on reasonable suspicion that criminal activity is afoot, is specifically limited by CPL 140.50 (1) to the geographical area of the officer’s employment.
The Legislature still retains this rigidly restrictive provision even though CPL 140.10 (2) and (3) allow those very same police officers to make arrests in various circumstances far outside their employment borders. While the District Attorney relies on the legal authority to effect an arrest anywhere in the State and even beyond, Officer Lindmark admitted, and the People do not contest, that when he approached defendant the first time (concededly, in the City of Poughkeepsie), and he saw the VCR under defendant’s arm, he lacked an adequate legal basis for an arrest. Indeed, before stopping defendant, there was no known complaint of a missing VCR, a specific burglary, or any other particular crime to which defendant could then be, even remotely, connected.
The People also argue that since Lindmark first saw Edmonds in the Town he, logically, ought to have been permitted to follow defendant across the City-Town border, merely to inquire, moments later. This argument, as cogent as it is, must also be rejected.
To begin with, this contention finds absolutely no sustenance in the language of CPL 140.50 (1). The theory may be likened to the long-standing doctrine of "close pursuit” or "hot pursuit,” a legal concept applicable to a police chase from within, to outside an officer’s geographical jurisdiction in order to effectuate a factually supportable arrest. However, this only applies to arrests. (CPL 140.10 [2]; People v Hunter, 82 AD2d 893, affd 55 NY2d 930.) Currently, in the law allowing the minimally intrusive stop and inquiry within an officer’s spatial authority, there is no analogous exception for "hot pursuit,” although common sense would dictate there ought to be.
The People also suggest that, inasmuch as the Town of Poughkeepsie physically surrounds the City of Poughkeepsie, *970 police jurisdiction should be concurrent. As reasonable as that argument also sounds — and is — the Legislature, decades ago, decreed otherwise. Since each municipality is separately governed and each employs and pays for its own independent police department, each must be deemed jurisdictionally separate for purposes of CPL 140.50 (1).
The People also insist that the Legislature, in enacting CPL 140.50 (1), did not intend it to be so strictly construed as to derail this prosecution. Again, as sensible and inviting as that contention is, the People cite nothing to expose any legislative intent which is at variance with the statute’s plain language. As suspect as the wisdom of the law’s restrictiveness is, its language is absolutely unambiguous.
For guidance and for the purpose of uncovering any evidence of the lawmakers’ original aim, this court initiated a review of the statute’s legislative history, read its practice commentary (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 140.50, at 571-573), and searched for any decisional precedent in the context of a criminal case — all in vain. Therefore, the People’s assertion— that the application of the statute as written, and as defendant would have it, contravenes the Legislature’s design— appears unprovable.
In light of the foregoing, the officer had no legal authority to stop and question defendant outside the Town’s borders, and all evidence consequentially acquired must now be suppressed.
As the court is constrained to rule that the officer lost jurisdiction to so act once he crossed into the City of Poughkeepsie a holding itself requiring suppression, the remaining issue of whether the officer had a reasonable basis to stop and question defendant once inside the City of Poughkeepsie becomes moot and need not be reached.*
The court feels compelled to comment on this bizarre result. Concededly, some may genuinely believe it legitimate, intelligent, and appropriate to place greater spatial restrictions on a police officer’s power to stop and question, than exist on his or her power to effect a full-blown arrest. However, it strains common sense to a breaking point to restrict so severely and *971 arbitrarily, the officer’s power to stop and question, that a mere stepping across an invisible, legal line cuts off that minimally intrusive authority, regardless of an officer’s good faith and irrespective of how well-founded his or her suspicion of criminality may be.
While in this case the indictment against Mr. Edmonds primarily alleges a violation of a victim’s property rights, society must be cautioned that the same legal outcome would abide if the crimes suspected and charged were either rape, arson, kidnapping, murder, or any other form of mayhem.
Therefore, this court most respectfully urges the New York State Legislature to review and consider an amendment to CPL 140.50 (1) in order to give a local police officer, at the very least, the extended power to stop and question a suspect in an adjoining jurisdiction. If that be deemed too broad, perhaps expanding an officer’s power a mere 1,000 feet into an adjoining jurisdiction would substantially correct the problem, made evident here, in those cases where the observations begin within, and continue beyond an officer’s jurisdictional border. Such a modest statutory enhancement of authority would pose no risk to any person’s legitimate privacy rights, but it would decidedly prevent a repetition of the anomalous and arbitrary result this court is now legally bound to reach.

 If the issue of the existence of a reasonable basis for Lindmark to stop and inquire were addressed in this case, this court would answer that question in the affirmative in light of Terry v Ohio (392 US 1), People v Hollman (79 NY2d 181, supra), and People v De Bour (40 NY2d 210, supra).