OPINION OF THE COURT
Ronald H. Tills, J.
By omnibus motion dated March 19, 2002, defendant seeks various forms of relief, including dismissal of the indictment herein pursuant to CPL 210.20 (1) (h), on the basis that the arresting officer lacked the authority to act outside of the geographical area of his employment. By affidavit dated April 10, 2002, the District Attorney opposes defendant’s motion on two alternative theories, one the “anomalous situation” theory and second the “citizen’s arrest” theory.
*529 Following a testimonial hearing conducted on May 30 and June 7, 2002, the court finds and decides as follows:
Findings of Fact
On August 24, 2001, at approximately 6:00 p.m., Patrolman Tom Brown of the Town of Amherst Police Department was on duty in uniform operating a marked Town of Amherst police vehicle. As he traveled southbound on Niagara Falls Boulevard, he stopped at a red light, at which point he observed that the driver of the vehicle stopped in the southbound lane next to him was not wearing a seat belt, a violation of Vehicle and Traffic Law § 1229-c (3). Officer Brown also observed that the windshield of the vehicle was cracked. The crack extended from the middle of the windshield all the way down in such a fashion that the officer concluded that it would distort the driver’s vision, a violation of section 375 (22) of the Vehicle and Traffic Law.*
Officer Brown subsequently activated the lights on his patrol vehicle and pulled the defendant over in the vicinity of 673 Niagara Falls Boulevard. The defendant’s vehicle was being operated in the southbound lanes of Niagara Falls Boulevard throughout this time frame.
Based upon the stipulation entered into by the parties during the hearing, the “center line” of Niagara Falls Boulevard is the division line between the Town of Amherst and the Town of Tonawanda. Proof adduced during the hearing further established that the northbound lanes of said street are in the Town of Amherst and the southbound lanes are in the Town of Tonawanda.
Conclusions of Law
Pursuant to CPL 140.10 (2):
“A police officer may arrest a person for a petty offense * * * only when:
“(a) such offense was committed or believed to have been committed within the geographical area of such police officer’s employment * * * .”
A petty offense is defined in CPL 1.20 (39) as “a violation or a traffic infraction.”
CPL 1.20 (34-a) (b) states in relevant part: “A * * * town * * * constitutes the ‘geographical area of employment’ of any *530 police officer employed as such by an agency of such political subdivision * * * .”
Defendant submits that, based upon the foregoing statutes, the indictment herein must be dismissed on the basis that (1) the police officer lacked authority to arrest the defendant for the petty offenses upon which the initial stop was based, and (2) since the initial stop was tainted, all further evidence obtained as a result thereof is “fruit of the poisonous tree” and must be suppressed. The court agrees. As stated clearly and succinctly by our Appellate Division, Fourth Department, a police officer has “no authority * * * to make an arrest for a traffic violation committed outside of his jurisdiction.” (People v Howard, 115 AD2d 321, 321 [citations omitted].)
The District Attorney seeks to justify the officer’s actions with two separate arguments. The first includes an examination of CPL 20.50 (2), which sets forth the geographical jurisdiction of certain local courts within the state, including town courts, and states in relevant part: “Where an offense prosecutable in a local criminal court is committed * * * in a town * * * but within one hundred yards of any other such political subdivision, it may be prosecuted in either such political subdivision.”
The District Attorney correctly refers to this as “an anomalous situation where a Town Court would have jurisdiction to prosecute [sic] a petty offense within 100 yards of its borders, but police officers employed by the Town could not make an arrest for such an offense outside the town boundary.”
In an attempt to discern the reasoning behind the statute, this court has reviewed the “Memorandum in Support and Explanation of Proposed Criminal Procedure Law” prepared by the Commission on Revision of the Penal Law and Criminal Code dated March 1970. In discussing what is referred to therein as “The bailiwick problem” (see para A-2 [b]), the Commission specifically notes: “As to the petty offenses (violations and traffic infractions), however, arrests [by a police officer] may be made only in the county of commission of the offense or an adjoining county, and only if the offense was committed in the arresting officer’s bailiwick.”
It appears abundantly clear from this review that the issue was closely examined and a determination made to limit police authority, for whatever reason. It is not the function of this court to second guess the wisdom of the Legislature.
A problem somewhat similar to that posed herein was discussed in a decision by the learned Honorable George D. *531 Marlow of the County Court, Dutchess County, nine years ago in People v Edmonds (157 Misc 2d 966, 971), wherein the good Judge noted that his ruling concluded in a “bizarre result” in relation to a police officer’s jurisdictional authority in a “stop and question” situation. The court there (at 971) “respectfully urge[d] the New York State Legislature to review and consider an amendment to CPL 140.50 (1) * * * .” Alas, his pleadings fell on deaf ears. Had the Legislature followed the court’s heeding lo those many years ago, it may well have examined and reconsidered the restrictions set forth in CPL 140.10 (2) (a) as well, possibly obviating the situation herein.
This court most respectfully urges the New York State Legislature to review the bailiwick problem and consider an amendment to CPL 140.10 (2), at least to make it consistent with CPL 20.50 (2). In conjunction therewith, the issues raised by the Dutchess County Court in 1993 may also warrant examination.
The second argument submitted by the prosecutor seeks to allow the officer’s actions pursuant to CPL 140.30, commonly referred to as a “citizen’s arrest.” In support of their position, they cite “People v LaFontaine (235 AD[2d 93], 96-99, 664 NYS2d 587, [reversed] on other grounds, 92 NY2d 470, 682 NYS2d 671).”
This court finds relevant here the following from that decision:
“There is some authority for the proposition that police officers acting outside their jurisdiction will lose their status as private persons if they act under the ‘color of authority’. However, other courts have held that the arrest is not invalidated unless the officer uses the power of his office to obtain evidence not available to private citizens.” (People v LaFontaine, supra at 97-98 [citations omitted].)
The Court therein also noted that in the circumstances set forth in that instance: “[the officers] gained no evidence solely by virtue of their official status.” (People v LaFontaine, supra at 98.)
Here, the evidence which supports the felony charges in the instant indictment was in fact gained as a result of the officer acting in his official capacity as a uniformed police officer, as was the information which sustains the charge of aggravated unlicensed operation of a motor vehicle in the third degree.
The court therefore finds that the Amherst police officer herein, restricted by the clear and unambiguous language of *532 CPL 140.10 (2) (a), exceeded his authority herein from the moment he illuminated the lights on his marked patrol vehicle for the purpose of stopping the defendant for petty offenses outside the Town of Amherst, his “bailiwick.” The officer lacked jurisdiction to arrest the defendant for the petty offenses set forth in the indictment. Further, since all evidence obtained which supports the misdemeanor and felony charges is, indeed, the fruit of the poisonous tree, defendant’s motion to suppress must be granted, and the indictment herein dismissed.

 Both offenses are traffic infractions pursuant to Vehicle and Traffic Law § 1800 (a).