*193 OPINION OF THE COURT
David S. Gideon, J.
Upon the omnibus motion and supporting affidavit of Gary M. Sommer, Esq., counsel for defendant herein, filed with this court on October 29, 2004, seeking, inter alia, dismissal pursuant to CPL 170.30 (1) (f), charging that the stop of the defendant’s vehicle was illegal and that all evidence thereby obtained should be suppressed as “fruit of the poisonous tree”; and upon the responding affidavit of Assistant District Attorney, Gaetano D. Fico, Esq. on behalf of the People of the State of New York, filed with this court on November 17, 2004, in opposition thereto; and, the matter having come before this court for a hearing on November 17, 2004 at 4:37 p.m. regarding only the issue hereinabove set forth; the parties having consented to holding subsequent argument and decision on the remaining motions pending the decision of this court as to the issue now addressed herein; and, this court having heard the testimony of Officer Scott C. Hare of the Town of DeWitt Police Department and the testimony of the defendant herein; now, upon consideration of all the relevant factors, and after due consideration of the testimony and respective arguments presented, this court finds as follows:
On May 23, 2004 at approximately 9:30 p.m., Officer Scott C. Hare, an HV2 year veteran of the Town of DeWitt Police Department was so employed and patrolling the streets in the Town of DeWitt traveling west at East Genesee Street near Erie Boulevard East when, as he testified, he received a radio dispatch over the East Zone Channel 3 (any unit in the vicinity report) regarding a hit-and-run automobile accident having occurred at East Genesee Street at Highbridge. Officer Hare further testified that upon initial receipt of the radio transmission, dispatch was unsure if the East Genesee Street at Highbridge location referred to the Town of DeWitt or the Town of Manlius, Highbridge Road being in the Town of DeWitt near Lyndon Corners and Highbridge Street being located in the Town of Manlius. Officer Hare testified that the initial radio transmission did, however, provide a witness description of the vehicle involved being a dark colored SUV with New York Registration No. CLN2410 registered to an address at 61 Ely Drive in the Town of DeWitt.
Officer Hare testified that he proceeded to the area of East Genesee Street at Highbridge Road, looking for the described vehicle, with negative results. Officer Hare then testified that *194 he received a subsequent radio transmission that the automobile accident had actually occurred in the Town of Manlius, that the Town of Manlius Police Department was at the scene of the accident, and that there were no physical injuries, only property damage to the vehicle at the scene. Officer Hare testified that he advised the Town of Manlius police officer at the scene, by radio transmission, that he would proceed to the registered vehicle owner’s residence at 61 Ely Drive in the Town of DeWitt to investigate.
Upon turning onto Ely Drive from East Genesee Street, Officer Hare testified that he observed the identified vehicle approaching his vehicle, with the defendant driving, whereupon Officer Hare testified that he turned around and proceeded to follow the vehicle onto East Genesee Street. Officer Hare then testified that he activated the lights and siren on his vehicle, stopping the defendant’s vehicle on East Genesee Street just past the Route 481 N on-ramp. Officer Hare then testified that he walked up to the defendant’s vehicle to determine if the defendant was injured, whereupon he observed a strong odor of alcohol. Officer Hare subsequently issued a simplified traffic information to the defendant charging him with driving while intoxicated (DWI) in violation of Vehicle and Traffic Law § 1192 (3). Officer Hare did not issue any other simplified traffic informations.
During his testimony on both direct, cross, redirect and recross, Officer Hare testified that his basis for the stop of the defendant’s vehicle was the radio transmissions he had received as hereinabove set forth.* (See, also, the first page of the DWI supporting deposition, marked as defendant’s exhibit A for identification, wherein Officer Hare reiterates that the radio transmissions received formed the basis for the stop of the defendant’s vehicle.)
*195 The District Attorney in both his closing arguments and his memorandum of law filed with this court on November 24, 2004 properly sets forth the usual standards applied in determining the legality in stopping an automobile. The standard utilized in determining the propriety in stopping a motor vehicle is not probable cause, but rather a reasonable suspicion of criminal activity; that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person, under the circumstances, to believe that criminal activity is at hand. (See, People v Chilton, 69 NY2d 928 [1987]; People v Sobotker, 43 NY2d 559 [1978].)
As stated in the leading case of People v Ingle (36 NY2d 413, 420 [1975]),
“the factual basis required to support a stop for a ‘routine traffic check’ is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable . . . All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.’ ” (See, also, Terry v Ohio, 392 US 1, 21 [1968].)
Both our Court of Appeals and the United States Supreme Court have clearly ruled that an investigative stop of an automobile constitutes a “seizure” governed by the constitutional strictures against unreasonable searches and seizures, and “ ‘that, absent at least a reasonable suspicion that its occupants had been, are then, or are about to be, engaged in conduct in violation of law’ (including traffic infractions), the stopping of an automobile constitutes an impermissible seizure.” (People v Rosario, 94 AD2d 329, 332 [1983] [additional emphasis added].)
Defense counsel argues, however, that while the District Attorney may be correct in what he sets forth as the usual standards to be applied, the instant case presents the very specific and unique exception presented by the police “bailiwick” problem set forth in CPL 140.10 (2). In pertinent part, CPL 140.10 (2) provides that:
“A police officer may arrest a person for a petty offense, . . . only when:
“(a) Such offense was committed or believed by him or her to have been committed within the geographical area of such po *196 lice officer’s employment or within one hundred yards of such geographical area.” (Emphasis added.) A petty offense is defined in CPL 1.20 (39) as “a violation or a traffic infraction.”
Counsel for the defendant cites the cases of People v Howard (115 AD2d 321 [4th Dept 1985]) and People v Graham (192 Misc 2d 528 [2002]), wherein it is stated that a police officer has no authority to make an investigatory stop or to make an arrest for a traffic violation committed outside of his jurisdiction.
While the decision reached by the Fourth Department in People v Howard (supra) is devoid of the factual basis for the determination made therein, in People v Graham (supra), the court therein dealt with a direct observation by that officer of Vehicle and Traffic Law Infractions (petty offenses) observed by that officer outside of that officer’s geographical area. In fact, in Graham (supra), the officer observed the infractions while traveling in the southbound lane of a highway; the northbound lane of which was within the geographical area of the police officer’s jurisdiction. The court in Graham found that the police officer, having observed the petty offenses outside of his geographical area, exceeded his authority from the moment he illuminated the lights on his patrol vehicle. (Id. at 532.)
In contrast to the factual basis presented in People v Graham (supra), however, Officer Hare in the matter now before this court did not himself observe a petty offense for which he activated his lights and siren, stopping the defendant’s vehicle. Nor did Officer Hare issue any simplified traffic informations for a petty offense in this matter. Officer Hare acted upon the strength of a radio bulletin from a “fellow officer or department” in making an investigatory stop of the defendant’s vehicle from which the charge of DWI in violation of Vehicle and Traffic Law § 1192 (3) ultimately resulted. It is clear from Officer Hare’s testimony that he did not expressly stop the defendant’s vehicle for driving while intoxicated, but rather on the strength of the radio transmission that he had received.
Under the “fellow officer” rule, “[a] police officer is entitled to act on the strength of a radio bulletin or a telephone or teletype alert from a fellow officer or department and to assume its reliability.” (People v Rosario, 78 NY2d 583, 588 [1991], quoting People v Lypka, 36 NY2d 210, 213 [1975].) Officers making arrests based on the transmitted information are justified in doing so because the officer or department furnishing that information presumptively possesses the requisite probable cause which justifies the warrantless arrest. However, where a defen *197 dant challenges an arresting officer’s warrantless action, the presumption of probable cause disappears and it becomes incumbent upon the People to establish that the officer or agency imparting the information, in fact possessed the probable cause to act. (People v Rosario at 588.) If the People meet their burden of proof, then the warrantless action may be deemed reasonable and lawful. Thus, an arresting officer is deemed to act with probable cause when making an arrest at the direction of another law enforcement officer who has the requisite probable cause. (Id.)
Further, in order to properly assert a challenge to the probable cause provided by a “fellow officer or department,” the defendant must assert a specific challenge to the reliability of the information either in his motion papers or during the suppression hearing. Otherwise, the People are not required to present evidence that the sender or provider of the information had the requisite probable cause. (People v Arefaine, 221 AD2d 979, 980 [1995].)
Ultimately, the test is what could lawfully be done based upon the radio transmissions received by Officer Hare, rather than his observations, per se; whether or not the petty offense was committed within Officer Hare’s geographical area of jurisdiction; and whether the circumstances, viewed objectively, justify the action taken by this officer. (People v Nesbitt, 1 AD3d 889 [4th Dept 2003].)
Accordingly, this court hereby finds that the actions of Officer Hare in stopping the defendant’s vehicle, based upon the radio transmissions he received from a “fellow officer or department,” was proper and it is hereby ordered that the motion of the defendant herein to dismiss, pursuant to GPL 170.30 (1) (f), is hereby denied.

 While Officer Hare did testify that he observed the defendant operating the vehicle, exceeding the speed limit, Officer Hare himself clearly testified that he did not issue any simplified traffic information for excessive speed, nor did he note the same in any of the reports filed. Additionally, while Officer Hare did testify that he was unsure if he was investigating a petty offense of leaving the scene of a property damage auto accident pursuant to Vehicle and Traffic Law § 600 (1) (a) or the misdemeanor of leaving the scene of a personal injury auto accident pursuant to Vehicle and Traffic Law § 600 (2) (a), as he did not know, at the time of the stop if the defendant himself was injured, as Officer Hare already had learned by subsequent radio transmission that there were no personal injuries at the scene of the accident, Officer Hare repeatedly testified that the basis for the stop was clearly the radio transmissions that he had received and not the excessive speed allegation or offense designation.